IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **ABSOLUTE SOFTWARE, INC. AND ABSOLUTE SOFTWARE CORPORATION**<br><br>Plaintiffs,<br><br>v.<br><br>**WORLD COMPUTER SECURITY CORPORATION AND FRONT DOOR SOFTWARE CORPORATION**<br><br>Defendants. | Case No. A-09-CA-142-LY<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Plaintiffs Absolute Software, Inc. and Absolute Software Corporation respectfully submit this opposition to defendants World Computer Security Corporation and Front Door Software Corporation's legally and factually baseless motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer to the United States District Court for the District of Colorado.

**TABLE OF CONTENTS**

Page No.

I. SUMMARY: DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE DEFENDANTS ADMITTEDLY OFFERED FOR SALE AND SOLD THE INFRINGING PRODUCTS TO TEXAS RESIDENTS AND CONTINUE TO PROVIDE INFRINGING SERVICES TO TEXAS RESIDENTS................................ 1

II. DEFENDANTS ADMIT COMMITTING ACCUSED ACTS IN TEXAS BY OFFERING FOR SALE AND SELLING THE INFRINGING PRODUCTS AND SERVICES TO TEXAS RESIDENTS...................................................................... 2

III. ABSOLUTE IS IN AUSTIN, TEXAS, WHERE ITS BUSINESS HAS BEEN AND CONTINUES TO BE HARMED BY DEFENDANTS' INFRINGEMENT........ 3

IV. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS. ............... 4

    A. As A Matter Of Law, Defendants Have Purposefully Availed Themselves Of The Benefits of Texas By Having Sold Infringing Products And Services To Texas Residents. ....................................................... 4

    B. Absolute's Claim Arises Out Of Defendants' Infringing Activities With Texas Because It Is The Offer For Sale And Sale Of Defendants' Accused Products And Services That Constitute Infringement. ......................... 7

    C. Exercise Of Personal Jurisdiction Does Not Offend The Traditional Notions Of Fair Play And Substantial Justice. .................................................... 7

V. THE COURT SHOULD DENY DEFENDANTS' MOTION TO TRANSFER............ 8

    A. The Private Interest Factors Weigh Against Transfer......................................... 9

    B. The Public Interest Factors Also Militate Against Transfer. ........................... 10

VI. CONCLUSION: AS A MATTER OF LAW, THIS COURT HAS JURISDICTION OVER DEFENDANTS AND VENUE IS PROPER. ....................... 11

# TABLE OF AUTHORITIES

Page No.

**CASES**

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994) ................................................................................. 4, 5, 7, 8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................................ 7

*Crystal Semiconductor Corp. v. OPTi, Inc.*,
   44 U.S.P.Q.2d 1497 U.S. Dist. LEXIS 20608, *9-10 (W.D. Tex. 1997) ........................ 4

*CSR Ltd. v. Link*,
   925 S.W.2d 591 (Tex. 1996) ............................................................................................. 4

*Ergonomic Lighting System, Inc. v. Commercial Petroleum Equipment/Usalco*,
   2003 U.S. Dist. LEXIS 5397 (W.D. Tex. 2003) ............................................................. 6

*Gemstar Group USA, Inc. v. USA, Inc.*,
   2008 U.S. Dist. LEXIS 91190 (S.D. Tex. 2008) ............................................................. 6

*In re D-Link Corp.*,
   183 Fed. Appx. 967 (Fed. Cir. 2006) ............................................................................... 9

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ....................................................................................... 8, 10

*J2 Global Communs. Inc. v. Protus IP Solutions, Inc.*,
   2009 U.S. Dist. LEXIS 13210 (E.D. Tex. Feb. 20, 2009) .............................................. 9

*Johnson v. Multidata Sys. Int'l Corp*,
   523 F.3d 602 (5th Cir. 2008) ............................................................................................ 4

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ........................................................................................................... 8

*McGee v. Int'l Life Insurance Co.*,
   355 U.S. 220 at 223 (1957) ............................................................................................... 7

*MHL Tek, LLC v. Nissan*,
   2009 U.S. Dist. LEXIS 13676 (E.D. Tex. Feb. 23, 2009) .............................................. 9

*Mink v. AAAA Development LLC*,
   190 F.3d 333, (5th Cir. 1999) ........................................................................................... 6

*Religious Technology Center v. Dell Liebreich*,
   339 F.3d 369 (5th Cir. 2003) ............................................................................................ 7

## TABLE OF AUTHORITIES

Page No

*Schlobohm v. Schapiro,*
    784 S.W.2d 355 (Tex. 1990).................................................................................... 4

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.,*
    395 F.3d 1275 (5th Cir. 2005)................................................................................... 8`

*Zippo Mfg.Co. v. Zipp Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997).......................... 5, 6


**STATUTES**


28 U.S.C. § 1391(c) ................................................................................................................... 8

28 U.S.C. § 1400(b) ................................................................................................................... 8

28 U.S.C. § 1404(a) ................................................................................................................... 8


**OTHER AUTHORITIES**


Tex. Civ. Prac. & Rem. Code Ann. § 17.042.............................................................................. 4

I.      **SUMMARY: DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE DEFENDANTS ADMITTEDLY OFFERED FOR SALE AND SOLD THE INFRINGING PRODUCTS TO TEXAS RESIDENTS AND CONTINUE TO PROVIDE INFRINGING SERVICES TO TEXAS RESIDENTS.**

This is a patent and trademark infringement action, in which Absolute Software, Inc. ("Absolute")—headquartered in Austin, Texas—is enforcing its rights against defendants World Computer Security Corporation and Front Door Software Corporation ("Defendants").

The Absolute patents asserted in this case involve a novel invention for tracking and recovering electronic devices, such as laptop computers. The invention includes a software program that contacts a monitoring center and sends information identifying the physical location of the computer in which the program resides. When the computer is stolen, the monitoring center then uses that information to track and recover the computer. Defendants admittedly offered for sale and sold and continue to offer for sale infringing software under an infringing name "Retriever" (the "Accused Product") to Texas residents and continue to provide monitoring and recovery services to those customers for a period of three years.

Defendants' motion to dismiss must be rejected because 1) Defendants admittedly sold the Accused Product in Texas; 2) Defendants admittedly have ongoing contractual relationships with Texas customers; 3) Defendants entered into an agreement with a Texas distributor to distribute the Accused Product; and 4) Absolute conducts its business in Austin, Texas, which business was and continues to be harmed by Defendants' infringement of Absolute's patent and trademark rights. Personal jurisdiction over Defendants in Texas comports with due process. Defendants' alternative motion is equally meritless as it fails to establish that Colorado is "clearly more convenient" when most of the witnesses and sources of proof are in Austin, Texas.

Defendants' motion ignores pertinent facts, *e.g.*, their sale of the Accused Product to Texas residents and ongoing relationships with them; nor does it even mention the agreements that Defendants have with the Texas distributor, or their offer for sale sent directly to Dell in Texas. All relief advanced in Defendants' motion should be denied.

## II. DEFENDANTS ADMIT COMMITTING ACCUSED ACTS IN TEXAS BY OFFERING FOR SALE AND SELLING THE INFRINGING PRODUCTS AND SERVICES TO TEXAS RESIDENTS.

Defendants unequivocally admit to having sold the infringing software products and services to customers in Texas, including residents in the Western District of Texas. See Hafeman Decl. ¶¶ 20-22. According to Defendants' invoices[1] to their customers, all but three of their Texas customers ordered, purchased and paid for the Accused Product at Defendants' on-line store at www.worldsecuritycorp.com through www.frontdoorsoftware.com.

Contrary to Defendants' characterization of the websites as "passive," the online store is a highly interactive website where customers are directed to conduct business transactions with Defendants. It allows customers to study the features of the Accused Product, order it, download it, upgrade it, and pay for it, all online.[2] Before allowing customers to use the Accused Product, Defendants impose contractual obligations on the customers by requiring them to create an account with www.frontdoorsoftware.com, disclose personally identifiable information, register their computers with assigned Customer ID Number, License Number and Connection Code, and enter into a software license agreement.[3] After customers purchase the Accused Product, Defendants provide the service of monitoring and tracking the laptop computers on which the Accused Product is installed, which necessarily means that Defendants maintain an *ongoing customer relationship* with each of its customers in Texas.[4]

In addition to conducting business online, defendant Front Door Software Corp. has a three-year distribution agreement with ROI Solutions, LLC, which has a principal place of business in Texas ("Texas Distributor").[5] Under the Agreement, defendant Front Door Software Corp. agreed to have Texas Distributor "become [its] distributor," "hold itself out as [its] agent," "customize [the Front Door Software] program under their name," and "sell it to Staples,

---

[1] Lee Decl. ¶¶ 2, 3; Exh. A, B [80:4-9].
[2] Lee Decl. ¶¶ 4, 5, 9; Exh. B [42:22-25; 43:14-17], C-1, C-2, G.
[3] Lee Decl. ¶¶ 6, 7, 8; Exh. B [43:1-7; 53:2-6], D, E, F.
[4] Lee Decl., ¶¶ 6, 8; Exh. D, F.
[5] Lee Decl. ¶ 10; Exh. H.

OfficeMax, retail store chains."[6]  Texas Distributor did in fact customize the Accused Product under the name of "Return2You" and sold it to over 100 Staples and OfficeMax stores.[7]  As part of this distribution deal, Front Door Software also entered into a five-year confidentiality agreement, where it agreed to be governed by Texas laws and specifically consented to personal jurisdiction and venue in Texas.[8]

### III.  ABSOLUTE IS IN AUSTIN, TEXAS, WHERE ITS BUSINESS HAS BEEN AND CONTINUES TO BE HARMED BY DEFENDANTS' INFRINGEMENT.

Absolute is headquartered in Austin, Texas.[9]  At its Austin, Texas U.S. headquarters, 30 of Absolute's employees engage in U.S. marketing and sales activities and maintain corporate records, including documents and other sources of proof in this action.[10]

Absolute has a number of customers in Austin, Texas, including Dell, Inc.  Dell—also headquartered in Austin—has been Absolute's biggest OEM (Original Equipment Manufacturer) partner since 1997.[11]  In fact, one of the main reasons that Absolute decided to establish its U.S. headquarters in Austin was to better serve Dell.  Many of Absolute's officers, including the COO, the Vice President of North American Sales, and the Vice President of Consumer Business, reside in Austin, Texas, and are based at Absolute's Austin, Texas headquarters.[12]

As recently as May 2009, Defendants directly approached Dell, Austin, Texas to solicit an OEM partnership.[13]  In their correspondence to Dell, Defendants mischaracterized the functionality and effectiveness of Absolute's competing products and touted their Accused Products as more effective and superior.

Thus, Defendants' infringing activities harm Absolute's business in Austin, Texas.

---

[6] Lee Decl. ¶¶ 10, 12, 13; Exh. B [56:14-18], J.
[7] Lee Decl. ¶ 13, 15; Exh. J, K.
[8] Lee Decl. ¶ 11; Exh. I.
[9] Livingston Decl., ¶¶ 2-3; Exh. A.
[10] Livingston Decl., ¶¶ 4-5, 10-11.
[11] Livingston Decl., ¶¶ 13-14
[12] Livingston Decl., ¶¶ 6-9, 15.
[13] Lee Decl., ¶ 16; Exh. L.

## IV. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS.

Where defendants challenge the personal jurisdiction, the plaintiff "need only make a *prima facie* case of jurisdiction," and "[p]roof by a preponderance of the evidence is not required." *Johnson v. Multidata Sys. Int'l Corp,* 523 F.3d 602, 609 (5th Cir. 2008). Moreover, "uncontroverted allegations by the plaintiff must be taken as true," and "any factual disputes contained in the affidavits must be resolved in the plaintiff's favor." *Crystal Semiconductor Corp. v. OPTi, Inc.*, 44 U.S.P.Q.2d 1497, 1997 U.S. Dist. LEXIS 20608, *9-10 (W.D. Tex. 1997). Accordingly, the nonresident defendant bears the burden of negating all bases of personal jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996). A nonresident defendant is subject to personal jurisdiction if (1) it is within the reach of the forum state's long arm statute—in this case Tex. Civ. Prac. & Rem. Code Ann. § 17.042-43—and (2) due process is satisfied. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). Because the Texas long-arm status is co-extensive with the limits of due process, the sole inquiry is whether the Court's exercise of personal jurisdiction comports with due process. *Id.*

The exercise of jurisdiction comports with due process when: (1) the defendant has purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state such that (2) the exercise of jurisdiction will not offend the traditional notions of fair play and substantial justice. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). Specific jurisdiction exists when the cause of action arises out of or relates to the defendant's contacts with the forum state. *Crystal, at *11*.

### A. As A Matter Of Law, Defendants Have Purposefully Availed Themselves Of The Benefits of Texas By Having Sold Infringing Products And Services To Texas Residents.

In a patent suit, when a non-resident deliberately places the infringing product into the "stream of commerce" with the expectation of exploiting business in the forum state, they are subject to personal jurisdiction of the forum state. *Beverly Hills Fan*, at 1556. Here, Defendants not only placed the infringing products into the stream of commerce, but they directly sold the Accused Product to Texas residents. They unequivocally admit to having offered for sale and

sold the Accused Product and services to Texas residents. This constitutes purposeful availment as a matter of law.

In *Beverly Hills Fan*, a New Jersey distributor of ceiling fans was sued for patent infringement in Virginia. There, as here, the distributor claimed that it was not a resident of Virginia, did not have offices there, was not registered to do business there, had no agent for service of process there, and had no assets or employees there. *Id.* at 1560. In fact, the distributor had never directly delivered the accused fans into Virginia. *Id.* It was undisputed that "at least fifty-two [accused] fans were present in Virginia bearing [the distributor's] warranty, reflecting an ongoing relationship with the Virginia retailer and customers." *Id.* at 1564. Even though the distributor did not directly sell fans into Virginia, because it had placed the fans in a stream of commerce that it knew or should have known would cause the products to end up in Virginia, and because the distributor had ongoing customer relationships with the Virginia fan purchasers, the Federal Circuit found personal jurisdiction.

Here, Defendants admit to selling the Accused Products to customers in Texas, which is sufficient to confer jurisdiction under *Beverly Hills Fan*. Moreover, Defendants maintain an ongoing customer relationship with each of their customers in Texas through monitoring services, just as the *Beverly Hills Fan* distributor had an ongoing customer relationship by virtue of its warranty. Indeed, the customer relationship is more significant here, where Defendants provide monitoring and tracking of the customer's laptops 24 hours a day, 7 days a week under its three-year service contracts. Further, Defendants here admittedly delivered the accused software products directly to customers in Texas and directly received payment from Texas customers. In short, Defendants' sales of product and services into Texas are even stronger than those that Federal Circuit found to be sufficient in *Beverly Hills Fan*. Defendants' Motion fails even to address the controlling case of *Beverly Hills Fan* in discussing the first prong.

Instead, Defendants incorrectly and misleadingly cites the *Gemstar and Zippo* cases, but they are factually and legally inapposite to Defendants' arguments. Motion, ¶¶ 24-25. In

*Gemstar Group USA, Inc. v. Ferragamo USA, Inc.*, 2008 U.S. Dist. LEXIS 91190 *21 (S.D. Tex. 2008), defendant Ferragamo maintained a website which simply provided information about "its company, products, museum, employment, and news." *Id.* Unlike *Gemstar*, Defendants' online store is a highly interactive website. Again, it allows customers to order, download and pay for the Accused Products. Defendants' business transactions through their online store are exactly the type of Internet activities courts have found to be highly interactive so as to warrant exercising personal jurisdiction. *See Ergonomic Lighting System, Inc. v. Commercial Petroleum Equipment/Usalco,* 2003 U.S. Dist. LEXIS 5397 (W.D. Tex. 2003) (finding personal jurisdiction as the nonresident defendant maintains an interactive website to sell its products and services and said website can be accessed by Texas residents and business entities), *citing Mink v. AAAA Development LLC,* 190 F.3d 333, (5th Cir. 1999) (referring to *Zippo* discussed below, the Fifth Circuit did "find reasoning of *Zippo* is persuasive and adopt it in this Circuit"). In *Mink*, AAAA's website was insufficient to subject it to personal jurisdiction because "[t]here [was] no evidence…that it allow[ed] AAAA to do anything but reply to e-mail initiated by website visitors…AAAA's website d[id] not allow consumers to order or purchase products and services online." *Id.* at 337. *Mink* is factually distinguishable in that Defendants admit to having its Texas customers order and purchase the Accused Product and services online.

*Zippo Mfg.Co. v. Zipp Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) also fails to support Defendants' arguments. *Zippo* draws a distinction between a passive website, which does not support personal jurisdiction, and the more interactive websites that support personal jurisdiction because they allow a defendant to do business over the Internet by entering into contracts "that involve the knowing and repeated transmission of computer files over the Internet." *Id.* Here, Defendants clearly do business over the Internet; they impose contractual obligations on their customers by requiring them to create an account with them, disclose personally identifiable information, and register their computers, all online, and the customers are assigned a Customer ID Number, License Number and Connection Code online, the process of which necessarily requires knowing and repeated transmission of computer files over the

Internet.  Moreover, customers are required to enter into a software license agreement over the Internet before installing the accused software.  After the installation, Defendants knowingly and repeatedly transmit computer files to customers—as frequently as every 5 minutes or as infrequently as every 8 hours—to trigger an "information display" function.[14]

The first prong of purposeful minimum contacts is easily met.

### B. Absolute's Claim Arises Out Of Defendants' Infringing Activities With Texas Because It Is The Offer For Sale And Sale Of Defendants' Accused Products And Services That Constitute Infringement.

Absolute's claim arises out of Defendants' activities in Texas because it is their admitted sales activities to Texas residents that constitute the alleged infringement.  Absolute alleges that Defendants have infringed and are currently infringing the Absolute Patents by using, selling and/or offering for sale, by actively inducing others to use, sell and/or offer for sale products and processes embodying the inventions claimed in the Infringed Patents, and by contributing to the infringement of the Absolute Patents by others.  Complaint, ¶¶ 29-31.  Indeed, the Supreme Court repeatedly reaffirmed and the Fifth Circuit followed that "a single act may support specific jurisdiction where the act is directed at residents of the forum, and the cause of action relates to the act."  *Religious Technology Center v. Dell Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 476 n.18 (1985), citing *McGee v. Int'l Life Insurance Co.*, 355 U.S. 220 at 223 (1957).  The second prong of the due process test is also easily met.

### C. Exercise Of Personal Jurisdiction Does Not Offend The Traditional Notions Of Fair Play And Substantial Justice.

The cases in which jurisdiction is nonetheless unreasonable "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Beverly Hills Fan*, at 1568, citing *Burger King Corp.* 471 U.S. at 477 (1985) (defendants must prove this prong by presenting a "compelling case" of

---

[14] Lee Decl., ¶¶ 6, 8; Exh. F, J.

unreasonableness); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774-75, (1984) (purposeful minimum contacts "ordinarily" enough). *Beverly Hills Fan* was not "one of those rate case" and neither is this case because Virginia has "an interest in discouraging injuries that occur within the state." *Id.* So does Texas. It has substantial interests in discouraging patent infringement and trademark infringement that occur in the state, protecting the patent rights and trademark rights of its resident plaintiff, and preventing foreseeable harm to other residents.

## V. THE COURT SHOULD DENY DEFENDANTS' MOTION TO TRANSFER.

In a patent infringement suit, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Under 28 U.S.C. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Thus, if the Court finds it has personal jurisdiction over Defendants (which it should), then venue is necessarily proper. *Trintec Industries, Inc. v. Pedre Promotional products, Inc.*, 395 F.3d 1275, 1280 (5th Cir. 2005) (finding "the venue point is non-issue. Venue in a patent action against a corporate defendant exits where there is personal jurisdiction…Therefore, no separate venue inquiry is necessary.").

Nevertheless, Defendants demand that the Court should transfer the case under 28 U.S.C. § 1404(a). As the moving party, Defendants bear the burden of showing "good cause," which is only satisfied "when the movant demonstrates that the transferee venue is *clearly more convenient*." *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc). Courts consider private and public interest factors. The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern

the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*, at 315.  These factors overwhelmingly favor keeping venue in Texas.

### A.  The Private Interest Factors Weigh Against Transfer.

The private interest factor relating to the relative ease of access to sources of proof weighs against transfer.  It is the "[a] movant [who] must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties." *J2 Global Communs. Inc. v. Protus IP Solutions, Inc.*, 2009 U.S. Dist. LEXIS 13210, at *7 (E.D. Tex. Feb. 20, 2009).  Here, Defendants refer to sources of proof without any specificity.  Defendants simply assert relevant documents are in Evergreen, Colorado.  As Courts have repeatedly found, however, when documents can and will likely be produced electronically, the location of documents in the transferee district does not support transfer.  *MHL TEK, LLC v. Nissan Motor Co.*, 2009 U.S. Dist. LEXIS 13676, at *24-25 (E.D. Tex. Feb. 23, 2009), citing *In re D-Link Corp.,* 183 Fed. Appx. 967, 968 (Fed. Cir. 2006).  Indeed, when Defendants responded to discovery in connection with the Motion, they produced *all* of their documents *electronically* and served *all* of their interrogatory responses *electronically*.[15]  In any event, Absolute's records and documents are located at its Austin, Texas U.S. headquarters.  Thus, the location of documents and physical proof strongly favor keeping venue in Texas.

The availability of compulsory process to secure the attendance of witnesses also favors keeping venue in Texas.  Defendants—who bear the burden of proof on each of the factors—fail to identify a single unwilling non-party witness who could be compelled to appear in Colorado, but not in Texas.  If there are none, then the power to compel attendance at trial is of diminished importance.  *J2 Global Communs.*, at *14.  On the other hand, there are at least two non-party witnesses at Dell.  These witnesses are in Austin, Texas, and thus there is a compulsory process to secure their attendance available in Texas, but not in Colorado.  Thus, this factor heavily favors keeping venue in Texas.

---

[15] Lee Decl., ¶ 17; Exh. M.

Defendants offered absolutely no evidence or argument with respect to the cost of attendance for willing witnesses.  Thus, this factor cannot support transfer.

### B.   The Public Interest Factors Also Militate Against Transfer.

The administrative difficulties flowing from court congestion weigh against transfer.  Transferring Absolute's claims against Defendants would require re-filing of the complaint with the district of Colorado, conducting another case management conference, and rescheduling upcoming dates.  This Court has already expended its time and resources in scheduling and conducting a case management conference and issuing a scheduling order.  Transferring would only impose additional administrative difficulties flowing from court congestion.

The local interest in deciding localized interests at home favors keeping venue in Texas.  Texas has a substantial interest in adjudicating this dispute and discouraging injuries that has occurred and continue to occur to its resident plaintiff and preventing foreseeable injuries to other residents of Texas, including Dell.  This factor also weighs against transfer.

As this case involves U.S. patent and trademark laws, both the transferor and transferee districts are equally capable of applying the law that will govern the case.  This factor is neutral.

There are no conflicts of laws or foreign law.  The factor relating to avoidance of unnecessary problems of conflict of laws is neutral as well.

Accordingly, the *Volkswagen* factors do not support transfer to Colorado.  When the true facts are considered, it is clear that Defendants have failed to meet their burden of proof and that the *Volkswagen* factors refute a transfer under Section 1404(a).  Defendants failed to satisfy the high burden required to upset the Plaintiffs' choice of forum.

**VI.   CONCLUSION: AS A MATTER OF LAW, THIS COURT HAS JURISDICTION OVER DEFENDANTS AND VENUE IS PROPER.**

As established above, this Court has personal jurisdiction over both defendants in Texas. They have failed to meet their burden of proving that Colorado is "*clearly more convenient*" than Texas in light of the private and public factors the Court is required to consider. Accordingly, Absolute respectfully requests that the Court deny Defendants' Motion in its entirety.

Dated:  August 21, 2009                    Respectfully submitted,


By:    /s/Irene Y. Lee
RUSS, AUGUST & KABAT
Marc A. Fenster (CA Bar No. 181067)
E-mail: mfenster@raklaw.com
Irene Y. Lee (CA Bar No. 213625)
E-mail: ilee@raklaw.com
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

GUNN, LEE & CAVE, P.C.
John Cave (Texas Bar No. 00783812)
E-mail: jcave@gunn-lee.com
700 N. St. Mary's Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 886-9500
Facsimile: (210) 886-9883

**Attorney for Plaintiffs**
**Absolute Software, Inc. and**
**Absolute Software Corporation**

## CERTIFICATE OF SERVICE

I, Irene Y. Lee, hereby certify that on August 21, 2009, I electronically filed **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO** with the Clerk of the Court using the Court's CM/ECF system notifying all counsel of record pursuant to Local Rule CV-5(a)(1) as indicated below.

Dated: August 21, 2009                                   /s/ Irene Y. Lee
                                                         Irene Y. Lee

David K. Anderson
david@andersonlaw.com
ANDERSON & CUNNINGHAM
1001 Fannin, Suite 270
Houston, TX 77002

Steven A. Haber
sah@obermayer.com
Michael Phillips
michael.phillips@obermayer.com
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
1617 John F. Kennedy Boulevard, 19th Floor
Philadelphia, PA 19103

Attorneys for Defendants
WORLD COMPUTER SECURITY CORPORATION and
FRONT DOOR SOFTWARE CORPORATION