FILED

2014 FEB -6  PM 12: 43

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ABSOLUTE SOFTWARE, INC. AND | § | |
| ABSOLUTE SOFTWARE CORP., | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | |
| | § | |
| WORLD COMPUTER SECURITY CORP. | § | CIVIL ACTION NO.  A-09-CV-142-LY |
| AND FRONT DOOR SOFTWARE CORP., | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER
## ON CLAIM CONSTRUCTION

Before the court are the parties' Second Amended Joint Claim Construction Statement filed

November 2, 2010 (Clerk's Doc. No. 125); Plaintiffs Absolute Software, Inc. and Absolute Software

Corp.'s (collectively, "Plaintiffs") Opening Claim Construction Brief filed March 29, 2010 (Clerk's

Doc. No. 65); Defendants Clear World Computer Security Corp. and Front Door Software Corp.'s

(collectively, "Defendants") Opening Claim Construction Brief filed March 29, 2010 (Clerk's Doc.

No. 64); Plaintiffs' Responsive Claim Construction Brief filed April 26, 2010 (Clerk's Doc. No. 75);

Defendants' Responsive Claim Construction Brief filed April 26, 2010 (Clerk's Doc. No. 77);

Plaintiffs' Reply Claim Construction Brief filed May 12, 2010 (Clerk's Doc. No. 86); Defendants'

Amended Reply to Defendants' Opening Claim Construction Brief filed May 12, 2010 (Clerk's Doc.

No. 89); Plaintiffs' Supplemental Claim Construction Brief filed October 8, 2010 (Clerk's Doc. No.

117); Defendants' Supplemental Claim Construction Brief filed October 8, 2010 (Clerk's Doc. No.

116);  and the parties' claim-construction presentations.

The court held a claim-construction hearing on November 22, 2010. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). After considering the patent and its prosecution history, the parties' claim-construction briefs, the applicable law regarding claim construction, and argument of counsel, the court now renders its order with regard to claim construction.

## I.    Introduction

The court renders this memorandum opinion and order to construe the claims of the patents-in-suit in this cause, U.S. Patent No. 6,244,758 ("the '758 Patent") and U.S. Patent No. 6,300,863 ("the '863 Patent"). The asserted patents generally relate to an apparatus and method for tracing and locating electronic devices via a global network, such as the Internet.[1]

Both the '758 Patent and the '863 Patent were asserted in the matter of *Absolute Software, Inc. v. Stealth Signal, Inc. et al.,* No. H-05-1416 (S.D. Tex. 2008), brought in the United States District Court for the Southern District of Texas. That court issued an Order on Claim Construction on June 17, 2009 in which Judge Werlein accepted a Report and Recommendation by a special master, construing in part the first two disputed claims in this action. Although not binding on this court, the reasoning and constructions from *Stealth* are discussed where appropriate. On July 21, 2010, Judge Werlein signed an order dismissing all causes of action in the *Stealth* matter.

---

[1] During the pendency of this action, Defendants requested the United States Patent and Trademark Office (PTO) to reexamine the '863 Patent, and requested this court to stay all proceedings, pending the outcome of the reexamination. The court denied a formal stay, but deferred determining claims construction for what this court deemed a reasonable amount of time for the PTO to conduct a reexamination. Although Defendants apparently filed their request for reexamination in December 2010, the PTO had not completed action on the request as of the time of a conference call the court conducted with the parties on January 15, 2014, over three years after the request was filed. The court will now proceed forward with this case.

2

## II.    Legal Principles of Claim Construction

Determining infringement is a two-step process. *See Markman,* 52 F.3d at 976 ("[There are] two elements of a simple patent case, construing the patent and determining whether infringement occurred . . . ."). First, the meaning and scope of the relevant claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Step one, claim construction, is the current issue before the court.

The court construes patent claims without the aid of a jury. *See Markman* 52 F.3d at 979. The "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id.* at 1313. The person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent. *Id.* Therefore, to ascertain the meaning of claims, courts must look to the claims, the specification, and the patent's prosecution history. *Id.* at 1314–17; *Markman*, 52 F.3d at 979.

Claim language guides the court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

Claims must also be read "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979. The specification "is always highly relevant to the claim construction analysis.

3

Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed.Cir.2002) (internal citations omitted).  In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess.  *Phillips*, 415 F.3d at 1316.  In such cases, the patentee's lexicography governs.  *Id.*  The specification may also reveal a patentee's intent to disclaim or disavow claim scope.  *Id.*  Such intentions are dispositive for claim construction.  *Id.* Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiment. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The prosecution history is another tool to supply the proper context for claim construction because it demonstrates how the inventor understood the invention. *Phillips*, 415 F.3d at 1317.  A patentee may serve as his own lexicographer and define a disputed term in prosecuting a patent. *Home Diags., Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed.Cir.2004).  Similarly, distinguishing the claimed invention over the prior art during prosecution indicates what the claims do not cover. *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed.Cir.1988).  The doctrine of prosecution disclaimer precludes patentees from recapturing specific meanings that were previously disclaimed during prosecution.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.Cir.2003).  Disclaimers of claim scope must be clear and unambiguous. *Middleton, Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed.Cir.2002).

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted).  Technical dictionaries and treatises

may help the court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, *Id.* at 1319, but it cannot "alter a claim construction dictated by a proper analysis of the intrinsic evidence," *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004).

### III.    Discussion

*A.    Agreed Constructions*

Prior to the claims-construction hearing, the parties agreed to the construction of three claim terms.  The following table summarizes the parties' agreement.  The court hereby adopts the agreed construction of all claim terms as listed below.

| Claim Term/Phrase | Adopted Agreed Construction[2] |
|---|---|
| "identifying indicia"<br><br>('758 Patent, Claim 72;<br>'863 Patent, Claim 1) | **information that indicates the identity of the electronic device, whether or not this information also indicates the identity of the agent** |
| "global network"<br><br>('863 Patent, Claim 1) | **the Internet; the telephone network is not a global network, but the internet includes and uses the telephone network** |
| "automatically"<br><br>('863 Patent, Claim 1) | **acting or operating in a manner essentially independent of external influence or control; this action or operation may be triggered by some external event, but such a triggering event must not involve a human command directing the action or operation** |

---

[2] Throughout, the **bolded** terms indicate the court's adopted construction.

B.    *Disputed Terms*

The parties dispute the construction of four terms. The following table summarizes the parties' proposed constructions of the disputed terms.

| Claim Term/Phrase | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| 1. "one or more of the global network communication links used to enable transmission between said electronic device and said host system, said transmission via said communication links used for determining the location of said electronic device"<br><br>('863 Patent, Claim 1) | "the identification of one or more (perhaps less than all) of the nodes in the Internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; the transmission between the electronic device and said host system is used to determine the location of said electronic device." | "The identification of one or more (perhaps less than all) of the IP addresses of the routers and nodes which define the connections (either direct or indirect) between two nodes in the Internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; a plurality of IP addresses of some of the routers of the communication links between the host and the electronic device must be used to determine the location of the electronic device, without using any triangulation methodology, without using any geometrical tracking, without using any GPS, without using any dead reckoning.  In the internet application, the agent initiates a traceroute routine which provides the host with the Internet communication links that were used to connect the client computer to the host. These Internet communication links will assist the host system in tracking the client computer. The IP address of the source of the DNS query is sent to the host within the DNS query. However, if the source of the query is transmitted through a "proxy" server, then the IP address of the client computer (which may not be unique since it may not have been assigned by the InterNIC) will likely be insufficient to track the location of the client computer. In such a scenario, it is necessary to determine the addresses of other IP routers which were accessed to enable communication between the client and the host.  These addresses and the times that they were accessed are compared with internal logs of the proxy server which record its clients' Internet access history.  In this way, the client can be uniquely identified and located.  A traceroute is performed by doing multiple pings from the computer to the host Internet monitoring subsystem.  The TTL field is incremented from one for each ping.  The first ping is sent with a TTL value of one.  It will fail at the first route and the first router address will be determined since the IP packet which will indicate the address of the first router will be returned to the source (client) computer.  The second ping will then be sent with a TTL value of two.  If this call fails, then the second router address will be determined. This process is continued until the plug succeeds.  By saving each router address, a trail of routers, linking the client computer with host Internet monitoring subsystem is created.  This route, representing the sequence of Internet communication links between the computer and the host, is then transmitted to the host Internet monitoring subsystem which saves this information on disk; in the case where the transmission is over a public switched telephone network (PSTN), the Caller ID may provide the location of said electronic device." |

| | | |
|---|---|---|
| 2. "one or more of the Internet communication links used to enable transmission between said electronic device and said host system, said communication links used for determining the location of said electronic device"<br><br>('758 Patent, Claim 72) | "the identification of one or more (perhaps less than all) of the nodes in the Internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; one or more of the provided Internet communication links must be used to determine the location of said electronic device." | "The identification of one or more (perhaps less than all) of the IP addresses of the routers and nodes which define the connections (either direct or indirect) between two nodes in the Internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; a plurality of IP addresses of some of the routers of the communication links between the host and the electronic device must be used to determine the location of the electronic device, without using any triangulation methodology, without using any geometrical tracking, without using any GPS, without using any dead reckoning.  In the internet application, the agent initiates a traceroute routine which provides the host with the Internet communication links that were used to connect the client computer to the host.  These Internet communication links will assist the host system in tracking the client computer.  The IP address of the source of the DNS query is sent to the host within the DNS query.  However, if the source of the query is transmitted through a "proxy" server, then the IP address of the client computer (which may not be unique since it may not have been assigned by the InterNIC) will likely be insufficient to track the location of the client computer.  In such a scenario, it is necessary to determine the addresses of other IP routers which were accessed to enable communication between the client and the host.  These addresses and the times that they were accessed are compared with internal logs of the proxy server which record its clients' Internet access history.  In this way, the client can be uniquely identified and located.  A traceroute is performed by doing multiple pings from the computer to the host Internet monitoring subsystem.  The TTL field is incremented from one for each ping.  The first ping is sent with a TTL value of one.  It will fail at the first route and the first router address will be determined since the IP packet which will indicate the address of the first router will be returned to the source (client) computer.  The second ping will then be sent with a TTL value of two.  If this call fails, then the second router address will be determined.  This process is continued until the plug succeeds.  By saving each router address, a trail of routers, linking the client computer with host Internet monitoring subsystem is created.  This route, representing the sequence of Internet communication links between the computer and the host, is then transmitted to the host Internet monitoring subsystem which saves this information on disk; in the case where the transmission is over a public switched telephone network (PSTN), the Caller ID may provide the location of said electronic device." |
| 3. "agent"<br><br>('758 Patent, Claim 72; '863 Patent, Claim 1) | [No construction necessary]<br><br>Or, if construed:<br>"software, firmware, or hardware programmed with a predefined task set installed on a device to be protected" | "throughout the entire operation of the agent residing in the computer (including a remote laptop), all signals between the agent and the host are transparent (hidden, stealth, not noticeable) to the user through either the screen or the speaker on the computer, the user has no idea the agent is present" |
| 4. "location"<br><br>('758 Patent, Claim 72; '863 Patent, Claim 1) | [No construction necessary]<br><br>Or, if construed:<br>"physical location" | "accurate enough location of the electronic device to enable a person to go and retrieve the electronic device" |

1. "one or more of the global network communication links used to enable transmission between said electronic device and said host system, said transmission via said communication links used for determining the location of said electronic device"

As a preliminary matter, the court notes that a large portion of Defendants' proposed construction is seeking to improperly limit the claim from language used in the specification. Specifically, after the first sentence of Defendants' proposed construction, Defendants, in 356 words, explain in detail an embodiment from the specification, limiting the claim to use of a traceroute routine and including a number of procedural steps that are in no way supported by the claim language, nor by other intrinsic evidence. As Plaintiffs point out, a traceroute routine requires use of all communication links, and thus limiting the claim to a traceroute routine would contradict the plain language of the claim, which allows for providing "one or more" of the communication links. In addition, Claim 9 of the '863 Patent, a dependent claim, protects "the method of claim 2 wherein said step of providing said host system with said one or more of the Internet communication links is accomplished using a traceroute routine." Patent '863, 34:7–9. As Claim 2 is dependent on and narrower than Claim 1, Claim 9 is dependent on and narrower than Claim 1. And the specific limitation added to Claim 9 cannot be imported to Claim 1. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement."). Moreover, the process described in Defendants' proposed construction limits the claim to using IP addresses as the only way to identify the nodes, a construction which excludes the preferred embodiment of using a MAC address to identify the nodes.

Defendants support their construction by citing the '863 Patent's specification and its discussion of the traceroute process, but never point the court to any evidence that the patentee demonstrated a clear intention to limit the claim scope using words or expressions of manifest inclusion or restriction. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (holding that even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction). Defendants do not argue that any such clear intention exists, but appear to argue that the court should construe the claim to be limited to the specific embodiments from the specification to which Defendants point. As this is contrary to the law of claim construction, the court will decline to do so. *See Philips*, 415 F.3d at 1319-20 (stating that it is improper to import limitations from the specification into the claims); *see also Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330–31 (Fed. Cir. 2006) ("This court, of course, repeats its rule that 'claims may not be construed with reference to the accused device'. . . the rule forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process . . . it forbids biasing the claim construction process to exclude or include specific features of the accused product or process.")

Comparing Plaintiffs' proposed construction with the first sentence of Defendants' proposed construction, there are two main points of contention between the parties:  (1) the meaning of "communication links" within the Internet[3] and (2) whether the file history of the '863 Patent affirmatively excludes certain methods of locating an electronic device.

---

[3]  The parties have agreed that "global network" means the Internet.

As to the first issue, Plaintiffs propose that communication links refer to "nodes" in the Internet. Defendants proposed construction suggests it means "IP addresses of the routers and nodes which define the connections between two nodes in the Internet."

The special master in *Stealth*, after examining both the '758 and '863 Patents, found that neither "node" nor "IP address of a router" was an appropriate definition for the phrase "communication link." *See Absolute Software, Inc. v. Stealth Signal, Inc. et al.*, No. H-05-1416 (S.D. Tex. Feb. 8, 2008) (report and recommendation on claim construction). The '863 specification refers to the act of a node "establishing a communication link" to another node. '863 Patent, Column 12, Lines 59-61 (stating that the agent "establishes a communication link to the Host [and] and sends its identity"). In this context, substituting "IP address of a router" does not make sense: the agent cannot "establish an IP router to the host." This reasoning also applies against Plaintiffs' argument that communication links should be defined as nodes: the agent cannot "establish a node to the host." In addition, the special master pointed out that Figure 1 in both the '758 and '863 Patent specifications depict examples of "communication links" which cannot be IP addresses of routers or nodes. The specifications both describe L9 as a "communication link" and L8 and L9 as "links." *See* '758 Patent, Column 5, Lines 51–52, Column 6, Line 65–Column 7, Line 1; '863 Patent, Column 7, Lines 12–13, Column 8, Lines 27–29. As seen in Figure 1, reproduced below, L8 and L9 are both shown as lines depicting the connection between two nodes, not as the nodes themselves, and not as an IP address of a router. The court agrees with the reasoning of *Stealth*, and finds that the definition of "communication link" is "any connection (either direct or indirect) used for data transmission between two nodes in the Internet." Accordingly, the first part of the term will be construed as: "the identification of one or more (perhaps less than all) of the connections (either

11

direct or indirect) between two nodes in the Internet (one of the nodes may be the electronic device

itself) used to enable data transmission between said electronic device and said host system."

As to the construction of the second part of the claim phrase, "said transmission via said

communication links used for determining the location of said electronic device," Plaintiffs propose



FIG.   1

"the transmission between the electronic device and said host system is used to determine the location of said electronic device" while Defendants, in the relevant part of their proposed construction, propose "a plurality of IP addresses of some of the routers of the communication links between the host and the electronic device must be used to determine the location of the electronic device, without using any triangulation methodology, without using any geometrical tracking, without using any GPS, without using any dead reckoning."

Plaintiffs' construction is a straightforward definition of the claim language. The transmission, described in the first phrase of the claim ("said transmission via said communication links"), is used to determine the location of the electronic device referred to in the first phrase ("said electronic device"). Defendants' construction is based on the file history of the claim. Specifically, in response to the examiner's initial rejection of Claim 1 as being obvious over prior art, Plaintiffs amended Claim 1 to include the "said transmission via" language and submitted a response to office action distinguishing the invention from prior art, stating, in part:

> In contrast, the present invention determines the location of the electronic device by relying on the transmission characteristic via the communication links, not triangulated location data that must first be collected and then transmitted to the monitoring computer as in the case of [the prior art]. The transmission of such triangulation data in and of itself does not provide information on the location . . . . Such location information is provided by the transmitted data instead.

Defendants contend that this representation requires that the claim be construed to include the affirmative limitation that the claim does not include use of any triangulation methodology, any geometrical tracking, any GPS, or any dead reckoning.

Plaintiffs argue that this is a misapplication of patent law. The disputed claim term comes from a method claim that includes the term "comprising":

A method for tracing an electronic device having an agent initiating communication and providing identifying indicia to a host system, said electronic device connectable to said host system through a global network, said method *comprising the steps of*:

automatically providing said host system with said identifying indicia through said global network for determining the identity of said electronic device; and

providing said host system with one or more global network communication links used to enable transmission between said electronic device and said host system, said transmission via said communication links used for determining the location of said electronic device.

'863 Patent, Claim 1 (emphasis added).  Accordingly, Plaintiffs argue, infringement occurs when a method includes these steps, but is not limited to methods that also include additional, unrecited elements or steps. *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps"); *see also Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).

The court agrees with Plaintiffs.  Although the file history distinguished inventions that used these other methods rather than using the transmission itself to determine location, it does not follow that any invention using these other methods cannot infringe on the '863 Patent.  Plaintiffs' response to the office action, emphasizing the use of the transmission to determine the location of the device, only further supports "the transmission between the electronic device and said host system is used to determine the location of said electronic device" for the construction of "said transmission via said communication links used for determining the location of said electronic device."

The court concludes that the correct construction of the term "one or more of the global network communication links used to enable transmission between said electronic device and said host system, said transmission via said communication links used for determining the location of said electronic device" is: "**the identification of one or more (perhaps less than all) of the**

14

**connections (either direct or indirect) between two nodes in the Internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; the transmission between the electronic device and said host system is used to determine the location of said electronic device.**"

2. "one or more of the Internet communication links used to enable transmission between said electronic device and said host system, said communication links used for determining the location of said electronic device"

Defendants' argument regarding this proposed construction is nearly identical to their argument for the last term, citing specific embodiments from the '758 Patent specification and arguing that the prosecution history limits Plaintiffs to Defendants' construction.

Plaintiffs argue that this claim term differs from the first in two respects. First, the term refers to "Internet communication links" rather than the broader "global network communications links," and second, the term does not require the limitation that "said transmission be used for determining the location of said electronic device," but instead requires that "said communication links" be used for determining the location.

As for the first difference, the parties have agreed that "global network" as used in this case refers to the Internet. The terms "Internet communication links" and "global network communication links" thus have no effective difference in the context of this case, and the court will accordingly construe the phrase "one or more of the Internet communication links used to enable transmission between said electronic device and said host system" the same as it construed "one or

more of the global network communication links used to enable transmission between said electronic device and said host system" in the first disputed claim term.

As for the second difference, Plaintiffs contend that the distinction is significant because it undermines Defendants' argument that the file history of the '863 Patent applies. Specifically, Plaintiffs point out that: (1) Claim 72 of the '758 Patent was already allowed by the time the amendment to Claim 1 of the '863 Patent was made and (2) Claim 72 of the '758 Patent does not include the language that was the subject of the amendment and the remarks from the '863 Patent file history. Thus, Plaintiffs argue that the "said transmission via" language added to Claim 1 of the '863 Patent, as well as the accompanying explanation, do not apply to this claim term.

When different words or phrases are used in separate claims, a difference in meaning is presumed. *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed.Cir.1987). This principle of claim construction would suggest that the difference in the use of terms has significance and that "said communication links" should not be limited to the construction of "said transmission." *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005). However, simply noting the difference in the use of claim language does not end the matter. *Id.* Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper. *Id.*

As this claim term was approved before prosecution of the '863 Patent, the court is not required to impose the amendment to Claim 1 of the '863 Patent, or Plaintiffs' discussion surrounding the amendment, onto Claim 72 of the '758 Patent. *See Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1333 (Fed. Cir. 1999) ("for [Plaintiff] to be bound by the statement made to the PTO in connection with a later prosecution of a different patent, the statement would

have to be one that the examiner relied upon in allowing the claims in the patent at issue").

However, statements made in connection with a later application as to the scope of a disclosed

invention are not irrelevant to claim construction of an earlier invention. As the Federal Circuit has

explained:

> We rejected the argument that the patentee was bound, or estopped, by a statement
> made in connection with a later application on which the examiner of the first
> application could not have relied. We did not suggest, however, that such a
> statement of the patentee as to the scope of the disclosed invention would be
> irrelevant. Any statement of the patentee in the prosecution of a related application
> as to the scope of the invention would be relevant to claim construction, and the
> relevance of the statement made in this instance is enhanced by the fact that it was
> made in an official proceeding in which the patentee had every incentive to exercise
> care in characterizing the scope of its invention.

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004). Accordingly, though

not binding, the explanations provided by Plaintiffs in the prosecution of the '863 Patent are relevant

to construction of claim terms from the '758 Patent.

As was discussed in context of the first disputed claim term, during prosecution of the '863

Patent, the examiner rejected Claim 1 as being obvious over prior art. Plaintiffs amended Claim 1

to include the "said transmission via" language and submitted a response to the office action

distinguishing the invention from prior art, contending that, unlike the prior art, the present invention

used the transmission via the communication links to determine the location of the electronic device,

and changed the phrase "said communication links" to "said transmission via said communication

links" in order to clarify what was being claimed. Plaintiffs asserted that the examiner's rejection

of Claim 1 for being obvious was "respectfully traversed." Plaintiff then provided the amendment

to Claim 1 and followed with an explanation of how the invention actually worked and how this was

not made obvious in light of the prior art. The court, after reading Plaintiffs' amendment and the

surrounding discussion, interprets the statement as a clarification of the term and not a limitation of it. The court believes that this clarification provided in Plaintiffs' amendment to Claim 1 of the '863 Patent, explaining to the examiner what is meant to be claimed, applies to the similar Claim 72 of the '758 Patent. Accordingly, the court will construe this term as it construed the first disputed term.

The court adopts the following definition of "one or more of the Internet communication links used to enable transmission between said electronic device and said host system, said communication links used for determining the location of said electronic device": "**the identification of one or more (perhaps less than all) of the connections (either direct or indirect) between two nodes in the internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; the transmission between the electronic device and said host system is used to determine the location of said electronic device.**"

## 3.  "agent"

Plaintiffs argue that, as "agent" is used only in the preambles, it does not limit any of the asserted claims and should not be construed as a claim limitation. *See Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1289 (Fed. Cir. 2008) ("it is assumed that the preamble language is duplicative of the language found in the body of the claims or merely provides context for the claims, absent any indication to the contrary in the claims, the specification or the prosecution history"); *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) (stating a preamble is not a claim limitation "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention"). If the term "agent" is construed,

Plaintiffs propose that "agent" means "software, firmware, or hardware programmed with a predefined task set installed on a device to be protected." Plaintiffs support this construction with Fig. 1 of both the '758 and '863 Patents, which provides that the "agent" is "implanted via hardware, software, firmware (such as ROM, flash ROM, EPROM, microprocessor)" and that the "'Agent' is implanted on 'Client' Device." '758 Patent, Fig. 1; '863 Patent, Fig. 1. In addition, Plaintiffs point to both the '758 and '863 Patents' summary of inventions, which state: "This invention enables electronic devices to be surveyed or monitored by implanting thereon an intelligent agent with a pre-defined task set." '758 Patent, 2:19–21; '863 Patent, 2:31–34.

Defendants support their construction with language from the patent specifications as well as prosecution history of the family of seven patents to which the '758 and '863 Patents belong. Defendants argue that the specifications of these patents consistently state that the agent is hidden and designed to evade detection. Defendants point to the prosecution history of the U.S. Patent No. 6,507,914 ("the '914 Patent"), a patent in the '758 and '863 Patents' family of patents, in which the Plaintiffs distinguished the invention from prior art by highlighting claim language that describes an agent "hiding within the computer" and describing the use of a "transparent agent." Defendants also provide an expert report by Michael Lester, a consultant with a technological corporation. The report asserts that Plaintiffs' proposed definition is not used in the industry and provides an article written in 1996 for a workshop at the University of Method that discusses the definition of agent. *See* Stan Franklin & Art Graesser, *Is it an Agent, or just a Program?: A Taxonomy for Autonomous Agents*, INTELLIGENT AGENTS III AGENT THEORIES, ARCHITECTURES, AND LANGUAGES Vol. 1193, 21, 21–35 (1997). The article offers a variety of definitions for the term "agent." Most definitions

describe a computer system or application that performs tasks. None of the definitions provide any suggestion of hiddenness, stealthness, or transparency. *See id.*

Plaintiffs respond that even though the specification refers to the agent being hidden and stealth, it is improper to so limit the claim. They point out that the law is clear that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim*, 358 F.3d at 906. Plaintiffs contend that although the agent being stealthy is a feature of the preferred embodiment, there is nothing in the claims to limit the invention to being stealthy; nor is there anything in the claims, the specification, or the file history that demonstrates a clear intention to limit the claim scope to exclude agents that are not stealthy.

The court finds a number of problems with Defendants' proposed construction. The Federal Circuit has repeatedly stated that limitations from the specification are not to be read into the claims. *Comark Comm., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (listing cases). Although the specification may describe a claim term's functional purpose, it does not necessarily aid in the interpretation of the phrase, or shed light on the meaning of the term to the inventor or the common meaning to one of skill in the art. *See id.* at 1187. Defendants' support their argument with language from the specification that refers to the objective of the invention to evade detection by an unauthorized user. However, "[t]he fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives." *Liebel-Flarsheim*, 358 F.3d at 908. The claim itself contains no reference to the agent being hidden to the user, nor does the specification show a clear

intention by the inventor to limit the claim in this way, or suggest that the inventor or one of skill in the art understood "agent" to mean something hidden. The court also finds the prosecution history of the '914 Patent unpersuasive, as it discusses claim language not at issue here. Specifically, the claims at issue here do not refer to a "transparent agent" nor do they include language claiming an agent that hides within the computer, unlike the claims discussed in the response to the office action for the '914 Patent.

Furthermore, the doctrine of claim differentiation cuts against Defendants' construction. The doctrine stems from "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir.1999). Although the doctrine of claim differentiation is not a hard and fast rule of construction, it does create a presumption that each claim of the patent has a different scope. *Comark Comm., Inc.*, 156 F.3d at 1187 (Fed. Cir. 1998). There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims; to the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant. *Id.*; *Tandom Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). Claim 36 of the '863 Patent incorporates Claim 1 by reference and further claims "compromising the step of loading the agent within said electronic device for with said host system such that said agent evades detection." To interpret "agent" to mean an agent that is transparent, hidden, and stealthy would render claim 36 superfluous and redundant of claim 1. *See id.*

Although the doctrine of claim differentiation is at its strongest where the limitation sought to be read into an independent claim already appears in a dependent claim, there is still a presumption that two independent claims have different scope when different words or phrases are used in those claims. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368–69 (Fed. Cir. 2005); *see also Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1365–69 (Fed.Cir.2000). Claim 72 of the '758 Patent is similar to Claim 1 of the same patent, but refers to "the Internet" rather than "a global network" and omits one of the three steps that comprise Claim 1. The omitted step is "loading said agent within said electronic device for initiating communication with said host system such that said agent evades detection." The omission of this step suggests that the agent in Claim 72 need not be loaded in such a way as to evade detection. The court finds that the term "agent" is not limited to being transparent, hidden, stealthy, or not noticeable as argued by Defendant, nor is the user required to have "no idea the agent is present."

The doctrine of claim differentiation likewise prevents the court from adopting all of Plaintiffs' proposed construction, "software, firmware, or hardware programmed with a predefined task set installed on a device to be protected." Claim 43 of the '863 Patent incorporates Claim 1 by reference and further claims "wherein the Agent is encoded in one or more forms, including software, firmware and hardware." Again, to interpret "agent" to be "software, firmware, or hardware" would render Claim 43 superfluous. However, the court agrees with the remainder of Plaintiffs' proposed construction: the term "agent" is used consistently throughout the claims and specifications to refer to an agent with a "predefined task set installed on a device to be protected."

Finally, an accepted, ordinary meaning of the word "agent" is "a computer application designed to automate certain tasks (as gathering information online)." *See* MERRIAM-WEBSTER'S

COLLEGIATE DICTIONARY 24 (11th ed. 2004). This meaning is bolstered by the Defendants' Franklin & Graesser article. The court believes that "a computer application designed to automate certain tasks" likely comports with what would have been a commonly known and understood term to a person having ordinary skill in the art at the time of the invention. *See CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002) (stating there is "a heavy presumption that a claim term carries its ordinary and customary meaning"). Nothing in the specification suggests that the term "agent" is used in a way inconsistent with this definition. To the contrary, although never explicitly stated, "agent" is used contextually to refer to a computer application throughout the patent document. Implicitly, an agent "with a predefined task set" would be designed to automate those tasks.

The court concludes that "agent" means "**a computer application with a predefined task set installed on a device to be protected**."


4. "location"

Defendants first argue that judicial estoppel applies to this claim and cite cases which have held that a party who benefits from one interpretation of a claim cannot later argue an inconsistent interpretation. It is unclear from Defendants' briefing where Defendants believe Plaintiffs have argued an inconsistent interpretation of the term "location." In *Stealth Signal*, the Plaintiffs argued for the same construction proposed here. *See Absolute Software, Inc. v. Stealth Signal, Inc. et al.,* No. H-05-1416 (S.D. Tex. Feb. 8, 2008) (report and recommendation on claim construction). The court will decline to apply the doctrine of judicial estoppel.

Defendants next argue that their construction is consistent with the specification and cite a number of sections of the specification that contain phrases such as "physically locate the computer" and "track the physical location." Plaintiffs argue that no construction is necessary, but if the court requires one, "physical location" is appropriate. Plaintiffs cite similar sections of the specification in support.

It is clear from the intrinsic evidence provided by both parties that the term "location" refers to the *physical* location of the device. Every time the word "location" is used in either patent, it refers to the physical location of the device. Nowhere in either patent is "location" defined as "accurate enough location of the electronic device to enable a person to go and retrieve the electronic device." Nowhere in either patent is there any discussion that specifies how accurate the "location" must be. Applying the "'heavy presumption' that a claim term carries its ordinary and customary meaning," *Teleflex*, 299 F.3d at 1325, the court adopts Plaintiffs' definition of this term and will construe "location" to mean "**physical location.**"

C.    *Summary Table of Adopted Constructions*

| Claim Term/Phrase | Court's Construction |
|---|---|
| "identifying indicia"<br><br>('758 Patent, Claim 72;<br>'863 Patent, Claim 1) | **information that indicates the identity of the electronic device, whether or not this information also indicates the identity of the agent** |
| "global network"<br><br>('863 Patent, Claim 1) | **the Internet; the telephone network is not a global network, but the internet includes and uses the telephone network** |

| | |
|---|---|
| "automatically"<br><br>('863 Patent, Claim 1) | **acting or operating in a manner essentially independent of external influence or control; this action or operation may be triggered by some external event, but such a triggering event must not involve a human command directing the action or operation** |
| "one or more of the global network communication links used to enable transmission between said electronic device and said host system, said transmission via said communication links used for determining the location of said electronic device"<br><br>('863 Patent, Claim 1) | **"the identification of one or more (perhaps less than all) of the connections (either direct or indirect) between two nodes in the Internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; the transmission between the electronic device and said host system is used to determine the location of said electronic device"** |
| "one or more of the Internet communication links used to enable transmission between said electronic device and said host system, said communication links used for determining the location of said electronic device"<br><br>('758 Patent, Claim 72) | **"the identification of one or more (perhaps less than all) of the connections (either direct or indirect) between two nodes in the internet (one of the nodes may be the electronic device itself) used to enable data transmission between said electronic device and said host system; the transmission between the electronic device and said host system is used to determine the location of said electronic device"** |
| "agent"<br><br>('758 Patent, Claim 72;<br>'863 Patent, Claim 1) | **"a computer application with a predefined task set installed on a device to be protected"** |
| "location"<br><br>('758 Patent, Claim 72;<br>'863 Patent, Claim 1) | **"physical location"** |

**IV.    Conclusion**

For the above reasons, the court construes the claims as noted and so **ORDERS**. No further claim terms require construction.

**IT IS FURTHER ORDERED** that this case is set for a **Scheduling Conference** on **March 26, 2014, at 9:30 a.m.**, in Courtroom 7, Seventh Floor, United States Courthouse, 501 W. 5th Street, Austin, Texas 78701. The parties shall meet and confer in advance of that date in an attempt to settle this case. If the case is not settled, the parties shall confer in an attempt to reach agreement on a schedule to follow for the remainder of this case. The court will render a Scheduling Order as a result of the March 26, 2014 conference.

SIGNED this _____ day of February, 2014.


LEE YEAKEL
UNITED STATES DISTRICT JUDGE

26